## Salem

VIOLET MARIE RAMSEY (SALASKI)

v.

COMMONWEALTH OF VIRGINIA

No. 0082-85

Decided May 6, 1986

**COUNSEL**

Robert T. Winston, for appellant.

M. Katharine Spong, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Violet Marie Ramsey (Salaski) appeals her convictions by jury trial of forgery, uttering and conspiracy to commit a felony on the grounds that the evidence was insufficient to support the convictions. Alternatively, she argues that the double jeopardy bar and application of Wharton's Rule precluded her conviction of conspiracy to commit a felony since she was convicted of the substantive offenses as a principal in the second degree.[1] We find the evidence sufficient to support all convictions and hold that the conspiracy conviction is not barred by either double jeopardy principles or Wharton's Rule.

On appeal we view the evidence in the light most favorable to the Commonwealth, granting to it all just and reasonable inferences deducible therefrom. *Evans* v. *Commonwealth*, 215 Va. 609, 612-613, 212 S.E.2d 268, 271 (1975). On October 27, 1983, the appellant met James Faulkner at a bar in Bristol, Tennessee. The two left together with Ramsey driving Faulkner's vehicle. They went to his motel room after stopping briefly at Bristol Memorial Hospital where Ramsey attempted to obtain a controlled drug, ativan. Faulkner was intoxicated at the time. The evidence was in conflict concerning Ramsey's condition. She indicated that at the time she was addicted to drugs and was taking more ativan than had been prescribed by her doctor. On this particular evening she had taken valium and ativan which she obtained from Faulkner. Faulkner indicated that insofar as he observed she was neither on drugs nor had she consumed any alcoholic beverage. Ramsey stayed the night in Faulkner's room and left the motel the follow-

---

[1] Although not affecting the present case, effective July 1, 1985, the General Assembly enacted Code § 18.2-23.1 which provides: "*Completed substantive offense bars conviction for conspiracy.*—Notwithstanding any other provision of this article or of § 18.2-256, in any case where a defendant has been tried and convicted of an act he has also conspired to commit, such defendant shall be subject to conviction only for the completed substantive offense and not thereafter be convicted for the underlying conspiracy."

Before the enactment of Code § 18.2-23.1, the Supreme Court in *Bell* v. *Commonwealth*, 220 Va. 87, 255 S.E.2d 498 (1979) rejected the "merger" theory of conspiracy and held that, as a matter of state substantive criminal law, a person could be convicted of a substantive offense and thereafter tried and convicted of conspiracy to commit the offense.

ing morning.

The next day, October 29, 1983, Ramsey accompanied her niece, Angela Bowen, to Miners Exchange Bank of Coeburn in Wise County, where Angela Bowen opened an account with a personalized check of James H. Faulkner made payable in the amount of five thousand dollars ($5,000) to one Marcus Welch. The check was purportedly signed by James H. Faulkner and drawn on his account with First Citizens Bank of Spartanburg, South Carolina. Faulkner's signature was a forgery. He had no knowledge that his check was missing until his bank later called to verify its authenticity. He did not give any of his checks to Ramsey.

Angela Bowen, who pled guilty to forgery and uttering of the check in question, testified that when Ramsey gave her the check it had already been completed on its face and had been made payable to Marcus Welch. Bowen indicated that she did not know who actually forged Faulkner's signature on the check, but acknowledged personally having forged the endorsement of Marcus Welch on the back in order to open the account. A report from the forensic laboratory was inconclusive as to whether Angela Bowen or Violet Marie Ramsey had forged Faulkner's signature.

Bowen testified that she first saw the check after Ramsey returned from Faulkner's motel room, at which time Ramsey said that Faulkner had given the check to her. Bowen explained that she personally picked the name "Marcus Welch" because she earlier had found a social security card bearing that name. Bowen acknowledged that Ramsey accompanied her to the bank when she opened the account, but wasn't beside or "nowhere near me" while opening the account.

In a statement to the arresting officer, Ramsey denied writing the check herself but acknowledged that Bowen had written it after she had given the check to her. Ramsey admitted accompanying Bowen to the bank in Coeburn where Bowen opened the account. Ramsey reiterated that Faulkner gave her the check.

Darlene Powers, who handled the account with Angela Bowen at Miners Exchange Bank, testified that on October 29, 1983, when Bowen opened the new account in the name of Marcus Welch, Ramsey was with her. She did not identify any direct par-

ticipation by Ramsey in opening the account.

## I.

The facts are sufficient to criminally implicate the appellant in both forgery and uttering. A principal in the second degree is a person who is present, aiding and abetting, by helping some way in the commission of the crime. Presence or consent alone is not sufficient to constitute aiding and abetting. It must be shown that the defendant intended his words, gestures, signals or actions to in some way encourage, advise, or urge, or in some way help the person committing the crime to commit it. *Underwood* v. *Commonwealth*, 218 Va. 1045, 1048, 243 S.E.2d 231, 233 (1978). A principal in the second degree is equally accountable and is subject to the same punishment as the actual perpetrator. Code § 18.2-18; *J.D. Briley* v. *Commonwealth*, 221 Va. 563, 573, 273 S.E.2d 57, 63 (1980).

Forgery is "the false making or materially altering with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." *Bullock* v. *Commonwealth*, 205 Va. 558, 561, 138 S.E.2d 261, 263 (1964) (quoting 8 Michie's Jur. *Forgery* § 2, at 559).

Uttering is " '[t]o put or send [as a forged check] into circulation . . . to utter and publish.' It is an assertion by word or action that a writing known to be forged is good and valid." *Bateman* v. *Commonwealth*, 205 Va. 595, 599-600, 139 S.E.2d 102, 106 (1964) (quoting Black's Law Dictionary 1716 (4th ed.)).

The evidence established, at a minimum, that Ramsey was a principal in the second degree to forgery and uttering. There was evidence upon which the trier-of-fact could have found that she unlawfully obtained a check belonging to James Faulkner. Additionally, Bowen testified that when she received the check from Ramsey, the check, made payable to one Marcus Welch in the amount of five thousand dollars ($5,000), contained Faulkner's signature. The inference is compelling that Ramsey forged the check or procured someone else to do so. In either case, she would be guilty of forgery.

Although the evidence here repels the inference that [the accused] personally forged the name of the maker, it is entirely consistent with the inference that [s]he procured it to be done. It has been the law of Virginia for more than a century and a half that one who procures the forgery of an instrument is an accessory before the fact if he was absent when the writing was forged, or a principal in the second degree if he was present. The distinction is of no consequence, because his guilt is the same, and he is subject to the same punishment, in either event.

*Fitzgerald* v. *Commonwealth*, 227 Va. 171, 174, 313 S.E.2d 394, 395-96 (1984).

The evidence also is sufficient to support a finding of Ramsey's guilt, as a principal in the second degree, to the crime of uttering. The placing or procuring of the name of a payee for whom Bowen could provide identification, and the delivery of the check to her, were sufficient to make Ramsey an accessory, even in the absence of overt acts at the bank in establishing the bogus account. Additionally, Ramsey's presence at the bank while Angela Bowen opened the account with a check which Ramsey had either forged, or procured to be forged, was, under the circumstances, sufficient evidence from which the trier-of-fact could find that she shared Bowen's criminal intent, and that she procured, encouraged and approved Bowen's commission of the crime. *Sutton* v. *Commonwealth*, 228 Va. 654, 666, 324 S.E.2d 665, 671 (1985). Ramsey was not merely silently and passively acquiescing in the known commission of a crime by another, nor was she merely present at the commission of a crime by someone whom she knew. She was a knowing, willing and actual participant in the uttering of the forged document.

## II.

Conspiracy is "an agreement between two or more persons by some concerted action to commit an offense." *Falden* v. *Commonwealth*, 167 Va. 542, 544, 189 S.E. 326, 327 (1937) (quoting J. B. Minor, Exposition of the Law of Crimes and Punishments 160 (1894)). A conspiracy is committed when the agreement to commit the offense is complete regardless whether any overt act in furtherance of commission of the substantive offense is initiated.

"[F]rom the very nature of the offense, it often may be established only by indirect and circumstantial evidence." *Floyd* v. *Commonwealth*, 219 Va. 575, 580, 249 S.E.2d 171, 174 (1978).

The evidence previously recited is sufficient to support the jury's finding that Ramsey did conspire, confederate and combine with Angela Bowen to commit the felony of uttering. The sequence of events supports the inference that Ramsey and Bowen acted in concert and discussed and planned to commit the crime of uttering; Ramsey accompanied Bowen to the bank to feloniously negotiate the check after having personally made the check payable to an individual for whom Bowen had identification.

### III.

■ Appellee has succinctly stated the reasons why Ramsey's convictions for forgery and uttering do not preclude the conspiracy conviction:

Conspiracy is a separate and distinct offense from that of aiding and abetting [the commission of a felony]. *United States* v. *Arrington*, 719 F.2d 701, 705 (4th Cir. 1983), *cert. denied*, 104 S.Ct. 1289 (1984); *United States* v. *Peterson*, 524 F.2d 167, 174 (4th Cir. 1975), *cert. denied*, 423 U.S. 1088 (1976). Conspiracy involves the additional element of preconcert and connivance not necessarily inherent in the mere joint activity common to aiding and abetting [the commission of a felony]. *Peterson*, 524 F.2d at 174. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932).

Clearly, the elements of the offenses of forgery and uttering are separate and distinct from the elements of the crime of conspiracy. As noted, the elements of conspiracy are complete upon proof that two or more persons agree to commit a crime. A necessary element of the crime of conspiracy is an "agreement." In order to find a person guilty as an accessory or as a principal in the second degree to a felony, the Commonwealth must prove the commission

of the felony. Proof of the commission of a felony is not a necessary element of the crime of conspiracy to commit a felony, and proof of an "agreement" to commit a felony is not a necessary element in a conviction for the commission of the felony. For this reason, the offenses are not the "same" and multiple convictions and punishments therefor are not prohibited by the double jeopardy clause. *See Whalen v. United States*, 445 U.S. 684 (1980).

█ Appellant's assertion that "Wharton's Rule" bars her convictions for conspiracy upon the conviction of aiding and abetting the commission of a felony misapplies the principle. Wharton's Rule is defined as follows:

> When to the idea of an offense plurality of agents is logically necessary, conspiracy, which assumes the voluntary accession of a person to a crime of such a character that it is aggravated by a plurality of agents, cannot be maintained.

*Stewart v. Commonwealth*, 225 Va. 473, 478, 303 S.E.2d 877, 879 (1983) (quoting 2 F. Wharton, Criminal Law § 1604, at 1862 (12th ed. 1932)). As the Commonwealth notes, "[t]he classic Wharton's Rule offenses are crimes such as adultery, incest, bigamy, dueling, or murder for hire," which necessarily involve at least two people; the offenses of forgery and uttering do not necessarily *require* the involvement of two people. Application of the rule is dependent upon a showing that the commission of the substantive offenses *requires* the participation of two people; the fact that two or more people combine to commit an offense that could be committed by only one person does not invoke application of the rule. To hold otherwise would necessarily mean that the Commonwealth could never convict two people for the commission of a crime and for conspiring to commit the crime. Under the guise of "Wharton's Rule" we would be fashioning a "merger" rule which, as previously noted, was not the law in Virginia at the time of these convictions. *See* footnote 1, *supra*.

For the foregoing reasons, the convictions are affirmed.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.